UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| H.C. BROWN, JR. #578263, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:22-cv-00754 |
| | ) |
| STATE OF TENNESSEE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

H.C. Brown, Jr., an inmate at Riverbend Maximum Security Institution, filed a pro se civil rights complaint under 42 U.S.C. § 1983 and an application to proceed as a pauper. The Complaint is before the Court for initial review. And as explained below, this case may go forward against certain Defendants. Plaintiff should consult the accompanying Order for further instructions.

**I.   Application to Proceed as a Pauper**

An inmate may bring a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). It appears that Plaintiff cannot pay the full filing fee in advance. (See Doc. No. 2 at 3). Therefore, Plaintiff's application will be granted and he will be assessed the $350.00 filing fee in the accompanying Order. 28 U.S.C. § 1915(b).

**II.  Initial Review**

The Court must review the Complaint to determine if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c)(1). In doing so, Plaintiff's pro se status requires the Court to hold the Complaint to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. **Allegations**

This case concerns Plaintiff's conditions of confinement at Riverbend Maximum Security Institution (Riverbend). Plaintiff sues the State of Tennessee and ten Riverbend officers, including Warden Tony Mays, Associate Warden of Treatment Michael Keys, Officer Darrell Phillips, Health Service Administrator Kyla Solomon, Sergeant Artrip, Grievance Chairperson Shanrekia Ward, Sergeant Linda Stokes, Captain Hardenburgh, Nurse Rita Nuke, and Nurse Nicole. (Doc. No. 1 at 1–6). Liberally construing the Complaint in Plaintiff's favor, he alleges as follows.

1. **Civil Rights Grievance**

On July 2, 2022, Plaintiff sent Warden Mays a copy of a "missing grievance" he had previously filed in which Plaintiff alleged that he had suffered discrimination. (Id. at 9, 12). This grievance was not processed, reviewed, or investigated, which violated inmate grievance policy. (Id.). Under this policy, Grievance Chairperson Ward was to send any civil rights grievance to Associate Warden Keys. (Id.) Keys was to initiate an investigation within 24 hours of receiving the grievance, and complete the investigation within 5 working days. (Id. at 12, 22). Plaintiff believes that Mays must have conspired with Keys to ensure that the grievance was not investigated. (Id. at 9, 12). On July 29, Plaintiff received back a copy of the second page of the grievance, but not the first. (Id. at 12). On August 8, Plaintiff requested an investigation of the grievance by the Tennessee Human Rights Commission, and he sent that organization a copy of the grievance on August 11. (Id. at 13, 22). Plaintiff received no response. (Id. at 13).

2. **June 2022 Incident**

On June 15, 2022, Plaintiff had a disagreement with Officer Phillips, and Phillips said that Plaintiff is "not from Tennessee, you['re] from Texas and don't run nothing out here." (Id. at 7, 14, 32). Phillips also said that he "was gonna send some people to see [Plaintiff]." (Id. at 32).

Phillips issued Plaintiff a disciplinary charge for "defiance" and "red tagged" Plaintiff's cell door, which is a "form of punishment." (Id. at 14, 32). Plaintiff was locked down for 4 days. (Id. at 14).

### 3. July 2022 Incident

On July 2, 2022, Officer Phillips and a non-defendant Officer were in Plaintiff's housing pod to "run showers," with Sergeant Stokes and Captain Hardenburgh on supervisory duty. (Id. at 14, 25, 27, 33). Phillips told Plaintiff that when Plaintiff's cell door opened, Phillips had "some people that's gonna see you." (Id. at 32). Phillips also threatened Plaintiff several times during security checks. (Id.). Plaintiff repeatedly asked to speak to a supervisor, to no avail. (Id.). Sergeant Stokes did tell Phillips several times to establish a more secure environment by stopping inmates from going "door to door." (Id.). Phillips nonetheless "allowed inmate[s] to remain out." (Id.). When Plaintiff left his cell, Inmate Brooks—who Phillips knew had problems with Plaintiff in the past—asked Plaintiff "what's up?" (Id. at 14–15, 33). A physical altercation ensued in which Plaintiff was pushed to the ground. (Id. at 8, 15, 33). Brooks got on top of Plaintiff and assaulted him while the Officers "stood and watched." (Id. at 8, 15, 33). Plaintiff was kicked in the head, and he does not know who kicked him, but he suspects it may have been an Officer. (Id. at 15, 33). It took 15-20 minutes for other Officers to respond to the assault, and when they arrived, Plaintiff gave a weapon to a trusted responding Officer. (Id. at 33). Plaintiff suffered head injuries, headaches, and blurred vision. (Id. at 8).

Nurse Rita Nuke and Nurse Nicole responded to the incident and checked on Inmate Brooks, but they did not visit Plaintiff in his cell afterward. (Id. at 33–34). On July 3, 2022, a different nurse told Plaintiff that his chart listed him as refusing treatment, which required Plaintiff to submit a sick call request. (Id. at 44). On July 4, Plaintiff told Nurse Nicole that he did not refuse treatment, and she told Plaintiff to submit a sick call request. (Id.). Plaintiff was transferred to a

different cell on July 5, and Nurse Rita Nuke and Nurse Nicole improperly documented Plaintiff as refusing a sick call because they attempted to visit Plaintiff in his old cell. (Id. at 16, 23, 45). During medical rounds on July 6, Plaintiff told Nurse Rita that he was having blurred vision and headaches. (Id. at 45). Nurse Rita became belligerent, told Plaintiff that she did not have time, and told him to submit a sick call request. (Id.). Plaintiff said he had already put in two such requests, and Nurse Rita responded, "Well put in another one!" (Id.). Plaintiff did so, and another nurse eventually scheduled Plaintiff to see a doctor. (Id.). Also on July 6, Plaintiff filed a grievance informing Health Service Administrator Solomon that Nurses Nuke and Nicole failed to follow proper protocol and that there was camera footage capturing the July 2 incident. (Id. at 10, 16, 22).

Meanwhile, based on the July 2 incident, Officer Phillips issued Plaintiff a disciplinary charge for assault with a weapon. (Id. at 9, 37). On July 15, 2022, Sergeant Artrip conducted a disciplinary hearing at which Plaintiff was not allowed to present evidence or question Phillips. (Id. at 9, 18). Plaintiff's appointed counselor said she viewed video of the incident, and Plaintiff asked who kicked him in the head, but the counselor responded, "We're not here to talk about that." (Id. at 19, 37–38). Plaintiff was found guilty, and on the hearing summary, Artrip falsely listed Sergeant Stokes as the reporting officer and witness (instead of Phillips) and a unit manager who was not present as "a board member." (Id. at 18–20, 25). Plaintiff's sentence included 20 days in solitary confinement, a $5.00 fine, and a recommendation for administrative segregation. (Id. at 9–10, 20, 41). Plaintiff appealed his disciplinary conviction, and all disciplinary appeals are to be decided by Warden Mays, but Plaintiff's appeal was not returned. (Id. at 10). After completing punitive segregation, Plaintiff was placed on maximum custody status. (Id.). Plaintiff was still on maximum custody status when he filed the Complaint by mailing it to the Court on September 21, 2022, despite not being officially reclassified by the classification board. (Id. at 10, 41, 56).

4

On July 17, 2022, the July 6 medical grievance was returned to Plaintiff, and he re-filed it with adjustments that same day. (Id. at 16, 22). Plaintiff believes that the processing of this grievance was intentionally delayed to avoid showing camera footage of the July 2 incident at his disciplinary hearing on July 15. (Id. at 10). On July 29, the grievance was rejected on first level review, and Plaintiff appealed that same day. (Id. at 22–23). On August 8, Grievance Chairperson Ward told Plaintiff that this grievance was in Warden Mays' office, but Ward did not consult Plaintiff about "an extension," so the time to review the grievance "lapse[d]" and Mays did not consider it. (Id. at 10–11, 23).

Plaintiff did not receive medical attention for the July 2 assault until July 25, 2022, when Plaintiff saw an optical doctor who prescribed him glasses for blurred vision. (Id. at 8, 16, 29–30). On August 2, Plaintiff saw a medical practitioner who prescribed Plaintiff 60 days of ibuprofen and refused Plaintiff's request for an MRI, stating that an MRI would be a "last resort" because it was "too expensive" and she would have "convince her supervisor" it was needed. (Id. at 8, 17, 29–30). On September 1, Plaintiff saw the practitioner again and was prescribed Excedrin to treat persistent headaches. (Id. at 29–30).

### B. Legal Standard

To determine if the Complaint states a claim for the purpose of initial review, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations [] as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). An assumption of truth does not

extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

C.  **Analysis**

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

1.  **Capacity of Defendants**

As an initial matter, the Court notes that Plaintiff checked boxes reflecting that he is suing Defendants in their official capacities. (Doc. No. 1 at 2–6). "An official-capacity claim against a person is essentially a claim against the" entity that the person represents, while "an individual-capacity claim seeks to hold an official personally liable for the wrong alleged." Peatross v. City of Memphis, 818 F.3d 233, 241 (6th Cir. 2016) (citing Essex v. Cnty. of Livingston, 518 F. App'x 351, 354 (6th Cir. 2013)). "However, a plaintiff's failure to explicitly state 'individual capacity' in the complaint is not necessarily fatal to" individual-capacity claims. Rodgers v. Banks, 344 F.3d 587, 594 (6th Cir. 2003). The Court "employ[s] a 'course of proceedings' test to ascertain whether a § 1983 defendant was on notice that the plaintiff intended to hold him or her personally liable, notwithstanding the plaintiff's failure to provide explicit notice." Id. (citing Shepherd v. Wellman, 313 F.3d 963, 967 (6th Cir. 2002)). In doing so, the Court analyzes "factors [such] as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint." Goodwin v. Summit Cnty., 703 F. App'x 379, 382 (6th Cir. 2017) (quoting Moore v. City of Harriman, 272 F.3d 769, 772 n.1 (6th Cir. 2001)).

Here, Plaintiff separates the Complaint into sections in an attempt to explain how each Defendant personally violated his rights. (See Doc. No. 1 at 9–48). Plaintiff also requests compensatory damages. (See id. at 8 (requesting $6.4 million "for injuries" and for being placed on maximum custody)). These factors reflect that the Complaint provides sufficient notice to Defendants of their potential individual liability. See Moore, 272 F.3d at 773. And "[t]o the extent doubt persists that this combination of factors warrants construing the complaint as one against the defendants individually, this doubt should be resolved in [] favor [of] a pro se plaintiff." Lindsay v. Bogle, 92 F. App'x 165, 169 (6th Cir. 2004) (citing Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999)). Accordingly, the Court will consider this case as being brought against Defendants in both their individual and official capacities.

### 2. Sovereign Immunity

Next, one of the named Defendants is the State of Tennessee. (Doc. No. 1 at 1). The individual Defendants are also alleged to represent the State of Tennessee (id. at 2–6), so Plaintiff's official-capacity claims against those Defendants are equivalent to claims against the State as well. See Peatross, 818 F.3d at 241. The State has sovereign immunity from suit in federal court. Boler v. Earley, 865 F.3d 391, 409–10 (6th Cir. 2017) (citing Ernst v. Rising, 427 F.3d 351, 358 (6th Cir. 2005)). Because Plaintiff seeks only monetary damages (Doc. No. 1 at 8), none of the exceptions to sovereign immunity apply here. See id. ("Section 1983 does not abrogate Eleventh Amendment immunity." (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989))); id. at 412 (explaining that the Ex Parte Young doctrine "allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity" where the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective"

(internal citations and quotation marks omitted)). For these reasons, the State of Tennessee and Plaintiff's official-capacity claims will be dismissed.

### 3. Grievance-Based and Supervisory Liability Claims

Next, several Defendants' only alleged misconduct is either mishandling grievances, failing to act in response to grievances, or supervising subordinates who engaged in misconduct. This includes Warden Mays, Associate Warden Keys, Health Services Administrator Solomon, and Grievance Chairperson Ward. It also includes Sergeant Stokes and Captain Hardenburgh, who Plaintiff sues because they were allegedly supervising Plaintiff's housing pod when he was assaulted on July 2, 2022.

Plaintiff fails to state a claim against these Defendants. "[C]laims premised on the mishandling of [] grievances" are subject to dismissal because "a prisoner has no constitutional right to an effective prison grievance procedure" and a violation of prison policy does not amount to a constitutional violation. Hursey v. Anderson, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (citations omitted). Similarly, "allegations of a failure to act or, more specifically, a failure to adequately investigate an administrative grievance or complaint do not give rise to constitutional violations." Partin v. Parris, No. 17-6172, 2018 WL 1631663, at *2 (6th Cir. Mar. 20, 2018) (citing Grinter v. Knight, 532 F.3d 567, 575–76 (6th Cir. 2008)). And to the extent Plaintiff is attempting to impose liability on these Defendants based on their supervisory positions, Plaintiff must allege more than that they had "the right to control employees. . . . There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" Griffith v. Franklin Cnty., Ky., 975 F.3d 554, 579 (6th Cir. 2020) (quoting Doe v. Claiborne Cnty., 103 F.3d 495, 511 (6th Cir. 1996)). "'[A]t a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly

8

Case 3:22-cv-00754   Document 4   Filed 05/15/23   Page 8 of 14 PageID #: 127

acquiesced in the unconstitutional conduct of the offending officers.'" Peatross, 818 F.3d at 242 (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)).

Here, Plaintiff does not allege that these six Defendants—Warden Mays, Associate Warden Keys, Health Services Administrator Solomon, Grievance Chairperson Ward, Sergeant Stokes, and Captain Hardenburgh—had the necessary level of participation in the alleged misconduct of their subordinate officers. Plaintiff, therefore, fails to state a claim against these Defendants.

### 4. June 2022 Incident

Plaintiff alleges that he had a disagreement with Officer Phillips on June 15, 2022, leading to Phillips stating that Plaintiff is "not from Tennessee, you['re] from Texas and don't run nothing out here." Phillips also said that he "was gonna send some people to see [Plaintiff]." Phillips then filed a disciplinary charge against Plaintiff for "defiance" and "red tagged" Plaintiff's cell door, leading to Plaintiff being locked down in his cell for 4 days.

These allegations fail to state a claim. Plaintiff asserts that Officer Phillips' comments amounted to national-origin-based discrimination. (See Doc. No. 1 at 14). To state a discrimination claim, a prisoner "need only to allege sufficient facts to show that a state actor intentionally discriminated against [him] because of membership in a protected class." Brand v. Motley, 526 F.3d 921, 924 (6th Cir. 2008) (internal citations and quotation marks omitted). But Plaintiff does not even clarify his national origin, much less provide factual allegations from which the Court can reasonably infer that Phillips' comments were motivated by Plaintiff's national origin. Therefore, Plaintiff fails to state a claim of discrimination against Phillips on this basis. See Bishawi v. Ne. Ohio Corr. Ctr., 628 F. App'x 339, 345 (6th Cir. 2014) ("Conclusory equal protection claims, without specific factual allegations, are inadequate to state a civil rights claim." (citing Harden-Bey v. Rutter, 524 F.3d 789, 796 (6th Cir. 2008))).

Plaintiff also asserts that Officer Phillips' punishment deprived Plaintiff of due process. (Doc. No. 1 at 14). But to bring a due process claim, a prisoner must first establish that he was deprived of a constitutionally protected interest. See Pickelhaupt v. Jackson, 364 F. App'x 221, 224 (6th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 224 (2005)). Prisoners have a liberty interest in avoiding confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Wilkinson, 545 U.S. at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Courts consider "the nature of the more-restrictive confinement and its duration in determining whether it imposes an atypical and significant hardship." Harden-Bey, 524 F.3d at 793 (internal quotation marks omitted) (collecting cases). And a four-day lockdown is simply too brief to qualify. See Bishawi, 628 F. App'x at 344 (explaining that a prisoner's confinement typically must be "prolonged or indefinite" to "implicate due process considerations" and holding that sixty-nine days did not qualify (citing Wilkinson, 545 U.S. at 224)); Joseph v. Curtin, 410 F. App'x 865, 868 (6th Cir. 2010) (same, for sixty-one days); cf. Harden-Bey, 524 F.3d at 793 (holding that three years in administrative segregation without a definite end-point or periodic review may be atypical and significant).

5. **July 2022 Incident**

   a. **Attack on Plaintiff**

Plaintiff alleges that, while running showers in his housing pod on July 2, 2022, Officer Phillips threatened Plaintiff several times and told him that when his cell door opened, Phillips had "some people that's gonna see you." When Plaintiff left his cell, Inmate Brooks—who Phillips knew had problems with Plaintiff in the past—got into a physical altercation with Plaintiff and pushed him to the ground. Brooks assaulted Plaintiff while Phillips and another Officer "stood and watched." Plaintiff was kicked in the head by someone he suspects may have been an Officer.

10

These allegations state two claims against Officer Phillips. First, as to the alleged assault by Inmate Brooks, the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Westmoreland v. Butler Cnty., Kentucky, 29 F.4th 721, 726 (6th Cir. 2022) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). Accepting Plaintiff's allegations as true, he has plausibly alleged a claim against Phillips for failing to protect him from the attack of Inmate Brooks.

Second, as to the alleged kick in the head Plaintiff sustained while being attacked by Inmate Brooks, Plaintiff is unsure whether it was delivered by Officer Phillips or another non-Defendant Officer. If the kick was delivered by another Officer, then Plaintiff has plausibly alleged a claim against Phillips for failing to protect him from that Officer's use of force. See Curry v. Scott, 249 F.3d 493, 506 (6th Cir. 2001) (explaining that the Eighth Amendment does not permit a prison official to "act[] with 'deliberate indifference' to a substantial risk that [another official] would cause prisoners serious harm" (citations omitted)). And if the kick was delivered by Officer Phillips himself, then Plaintiff has plausibly alleged an excessive force claim against Phillips. See Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) ("Although prison discipline may require that inmates endure relatively greater physical contact, the Eighth Amendment is nonetheless violated if the 'offending conduct reflects an unnecessary and wanton infliction of pain.'" (quoting Pelfrey v. Chambers, 43 F.3d 1034, 1037 (6th Cir. 1995))). Either way, Plaintiff may proceed with a claim against Phillips arising from the alleged kick in the head during the attack by Brooks.

### b. Disciplinary Proceedings

Plaintiff alleges that, after this incident, Officer Phillips issued Plaintiff a disciplinary charge for assault with a weapon. On July 15, 2022, Sergeant Artrip conducted a disciplinary hearing at which Plaintiff was not allowed to present evidence or question Phillips. Plaintiff was

11

found guilty, and on the hearing summary, Artrip falsely listed Sergeant Stokes as the reporting officer and witness (instead of Phillips) and an absent unit manager as "a board member." Plaintiff was sentenced to 20 days in solitary confinement, a $5.00 fine, and a recommendation for administrative segregation. After release from confinement around August 4, Plaintiff was placed on maximum custody status, where he remained when he filed the Complaint on September 21.

These allegations fail to state a claim. A due process claim, to restate, requires a prisoner to first establish the deprivation of a constitutionally protected interest. See Pickelhaupt, 364 F. App'x at 224. Prisoners have a protected interest in avoiding conditions of confinement that impose an "atypical and significant hardship." See Wilkinson, 545 U.S. at 223. To determine if confinement imposes an atypical and significant hardship, courts consider both the nature and duration of the confinement. See Harden-Bey, 524 F.3d at 793. This Court has previously found that restrictions similar to those imposed as a result of Plaintiff's disciplinary conviction were not atypical and significant. See Watkins v. Lindamood, No. 1:16-cv-00092, 2018 WL 1508732, at *5 (M.D. Tenn. Mar. 27, 2018) (collecting cases for the proposition that a written warning, $4.00 fine, and three-month visitation restriction was not atypical and significant); Barnes v. Garner, No. 3:18-cv-01030, 2020 WL 4339649, at *2–3, 9 (M.D. Tenn. July 27, 2020) (holding that three $4.00 fines, a three-month visitation restriction, and institutional probation was not atypical or significant (citing Bazzetta v. McGinnis, 430 F.3d 795, 804–05 (6th Cir. 2005))), report and recommendation adopted, No. 3:18-cv-01030, 2020 WL 4735140 (M.D. Tenn. Aug. 14, 2020).

As to Plaintiff's placement on maximum custody status following his disciplinary conviction, the Court is unable to conclude that Plaintiff experienced hardships that are atypical and significant as compared to ordinary prison life because Plaintiff does not describe the maximum-custody conditions in any way. See Mosley v. Batts, No. 19-5355, 2019 WL 8399882,

at *2 (6th Cir. Nov. 19, 2019) (holding that prisoner failed to state a due process claim where he "did not describe the conditions of confinement for the general prison population, explain how the conditions of his administrative segregation differed from ordinary conditions of confinement, or allege that the conditions of administrative segregation imposed on him differed from that imposed on similarly situated inmates" (citing Williams v. Lindamood, 526 F. App'x 559, 563 (6th Cir. 2013))). And regardless of the nature of the conditions, Plaintiff had been on maximum custody status for about 6 weeks at the time he filed the Complaint—a period of time too brief to support a due process claim. See Bishawi, 628 F. App'x at 344; Joseph, 410 F. App'x at 868.

Finally, the Court notes Plaintiff's allegation that Sergeant Artrip included false information on the hearing summary form about the reporting officer and witness (listing Sergeant Stokes instead of Officer Phillips) and a board member who was present. But inaccurate hearing summaries, on their own, "do not pose a constitutional violation." See Rich v. Palko, 920 F.3d 288, 298 n.18 (5th Cir. 2019) (citing Jarrett v. Twp. of Bensalem, 312 F. App'x 505, 507 (3d Cir. 2009)). Artrip did not, for example, make allegedly false statements that led to Plaintiff's disciplinary conviction and punishment, which would present constitutional concerns. See Hardy v. Fisher, 618 F. Supp. 3d 671, 688 (M.D. Tenn. 2022) ("[O]ffering false evidence or perjured testimony in a disciplinary hearing against a prisoner can sustain a substantive due process claim." (collecting cases)). Rather, the allegedly false information on the hearing summary was essentially administrative in nature and did not result in an identifiable injury to Plaintiff. Plaintiff therefore fails to state a claim relating to the disciplinary proceedings that followed the July 2 incident.

### c. Lack of Medical Treatment

Plaintiff alleges that the attack on July 2, 2022, left him with head injuries, headaches, and blurred vision. Nurse Rita Nuke and Nurse Nicole responded to the incident and checked on Inmate

13

Brooks, but they did not visit Plaintiff in his cell afterward or provide treatment over the coming days. Plaintiff eventually saw medical providers on July 25, August 2, and September 1.

The Eighth Amendment "is violated when prison doctors or officials are deliberately indifferent to [a] prisoner's serious medical needs." Richmond v. Huq, 885 F.3d 928, 937 (6th Cir. 2018) (quoting Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001)). Accepting Plaintiff's allegations as true, he has plausibly alleged a claim against Nurse Nuke and Nurse Nicole for deliberate indifference to serious medical needs following the incident on July 2, 2022.

### III. Conclusion

For these reasons, Plaintiff will be granted pauper status and he may proceed with the following individual-capacity Eighth Amendment claims: a claim against Officer Darrell Phillips for failing to protect Plaintiff from the attack of Inmate Brooks on July 2, 2022; a claim against Officer Phillips for *either* failing to protect him from a kick in the head by another Officer during Brooks' attack *or* using excessive force by kicking Plaintiff in the head himself; and claims against Nurse Rita Nuke and Nurse Nicole for deliberate indifference to serious medical needs following the July 2 incident. All other claims and Defendants will be dismissed.

An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE